# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD SCHUBACK,** : | CIVIL ACTION NO. 1:12-CV-320 |
|           **Plaintiff** : | |
| : | **(Judge Conner)** |
|           v. : | |
| : | |
| **THE LAW OFFICES OF PHILLIP S.** : | |
| **VAN EMBDEN, P.C., and PHILLIP S.** : | |
| **VAN EMBDEN,** : | |
|           **Defendants** : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 13) to enter judgment on the pleadings filed by defendants The Law Offices of Phillip S. Van Embden, P.C and Phillip S. Van Embden (collectively, "Van Embden"). Van Embden, asserting that there have been no violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, moves to dismiss plaintiff Richard Schuback's complaint (Doc. 1) with prejudice. For reasons that follow, the motion will be granted.

**I.**     **Statement of Facts and Procedural History**

This case arises out of Van Embden's efforts to collect a judgment from the Superior Court of New Jersey, Law Division, in Atlantic County. (Doc. 1, Ex. B). Entered on June 4, 1991, the judgment is against Schuback and in favor of Atlantic City Showboat, Inc., for $5,909.09 plus $115.00 in costs. (Id.) In March 2011, Van Embden served a writ of execution on a Wachovia Bank in Bergen County, New Jersey, to levy against Schuback's bank account for $11,473.82. (Doc. 1, Ex. C).

According to the complaint, Schuback has never resided in Bergen County, New Jersey, nor does he conduct any business there. (Doc. 1 ¶¶ 18-20). Schuback

instead resides in Hummelstown, Pennsylvania, and the underlying debt at issue accrued in Atlantic County, New Jersey. (Doc. 1 ¶ 5). Schuback alleges that Van Embden attempted to collect the debt by threatening him, stating that his "wages could be garnished" and that his home could be seized. (Doc. 1 ¶¶ 21, 23).

Schuback commenced this action on February 17, 2012, averring that Van Embden violated the FDCPA by threatening to take action that it could not or did not intend to take and by bringing a legal action outside the judicial district where Schuback resided or where the underlying debt accrued (Doc. 1 ¶ 28). Van Embden timely filed an answer (Doc. 10) on April 17, 2012, and the instant motion (Doc. 13) on May 15, 2012. The motion has been fully briefed and is ripe for disposition.

## II. **Standard of Review**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). The motion will be granted only if the "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005) (citing Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980)). Where, as here, a motion for judgment on the pleadings is premised on plaintiff's failure to state a claim upon which relief can be granted, the standard of review is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004) ("There is no material difference in the applicable legal

standards."); Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991); Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

The standard of review under Rule 12(b)(6) is well established. The court must conduct a two-part analysis to determine the sufficiency of the complaint. First, the court must separate the factual matters averred from legal conclusions asserted. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). Although facts pled in the complaint must be taken as true, the court may disregard any legal conclusions. Id. at 210-11. Second, the court must determine whether the factual matters averred are sufficient to show that plaintiff has a "plausible claim for relief." Id. at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). Ultimately, the analysis is "context-specific" and requires the court to "draw on its judicial experience and common sense" to determine whether facts alleged in the complaint suggest "more than the mere possibility of misconduct." Ashcroft, 556 U.S. at 679.

## III. Discussion

Schuback argues that Van Embden violated the FDCPA's venue provision, and the FDCPA's prohibition on the use of false, deceptive, or misleading representations in order to collect upon a debt. The court will address each of these arguments in turn.

### A. Venue under the FDCPA

In his complaint, Schuback argues that Van Embden violated the venue provision of the FDCPA, 15 U.S.C. § 1692i, by serving a writ of execution on a bank

3

located in Bergen County, New Jersey. The FDCPA venue provision provides in pertinent part:

> (a) Venue
> Any debt collector who brings *any legal action* on a debt *against any consumer* shall–
>
> . . . .
>
> (2) . . . bring such action only in the judicial district or similar legal entity--
> (A) in which such consumer signed the contract sued upon; or
> (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i (emphasis added). Schuback alleges that the action must have been brought where the debt accrued—Atlantic County, New Jersey—or where Schuback lives—Hummelstown, Pennsylvania. (Doc. 1 ¶ 28(f)). The issue before the court is whether the statutory language "any legal action on a debt against any consumer" encompasses a writ of execution on a bank account used to satisfy a previous judgment. The issue is one of first impression for the court.[1]

The parties rely on conflicting caselaw from other circuits to support their positions. Schuback refers to <u>Fox v. Citicorp Credit Servs., Inc.</u>, 15 F.3d 1507 (9th

---

[1] To establish liability under the FDCPA, a plaintiff must show that defendant is a "debt collector." See <u>Pollice v. Nat'l Tax Funding, L.P.</u>, 225 F.3d 379, 403 (3d Cir. 2000); 15 U.S.C. § 1692a(6) ("The term 'debt collector' [under the FDCPA] means any person who uses any instrumentality of interstate commerce . . . [to collect] any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."). In the case *sub judice*, the parties do not dispute that Van Embden is a debt collector for purposes of the FDCPA.

4

Cir. 1994), in which the Ninth Circuit held that the venue provision reaches a writ of garnishment proceeding. Id. at 1515 ("The plain meaning of the term 'legal action' encompasses all judicial proceedings, including those in enforcement of a previously-adjudicated right."). Citicorp claimed that a writ of garnishment is not a "legal action on a debt" for purposes of the venue provision; the court disagreed, finding the FDCPA's definition of "debt" to be instructive:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Accordingly, the court ruled that "[b]ecause 'debt' includes obligations reduced to judgment, any judicial proceeding relating to such a judgment constitutes a 'legal action on a debt.'" 15 F.3d at 1515.

By contrast, Van Embden relies on Pickens v. Collection Servs. of Athens, Inc., 165 F. Supp. 2d 1376, 1377 (M.D. Ga. 2001), aff'd, 273 F.3d 1121 (11th Cir. 2001). In Pickens, the court held that a wage garnishment action did not fall within the FDCPA's venue provision because the action was not against "a consumer." Id. at 1380. Similar to the Ninth Circuit in Fox, the Pickens court analyzed the plain text of the FDCPA's venue provision; however, the Pickens court arrived at a different conclusion. It framed the issue as follows:

> The relevant language at issue . . . is the following introductory clause: 'Any debt collector who brings any legal action on a debt *against a consumer*. . . .' 15 U.S.C. § 1692i(a) (emphasis added). The Court finds that the statutory language is clear in that the statute applies only to legal actions which are brought against a consumer. Thus, the Court must determine whether the garnishment action in this case was brought against the consumer or against another party.

5

Id. at 1380. Finding that, under Georgia law, a garnishment proceeding is an action "between the plaintiff [judgment creditor] and the garnishee," the court held that the venue provision was not violated.[2] Id. "[T]he judgment debtor is not a party to the garnishment. . . . [T]he garnishment action in this case was an action by the judgment creditor against the garnishee, and not against the consumer."[3] Id.

The Pickens court also distinguished the holding in Fox v. Citicorp Credit Services. Conceding that the holding in Fox stands for the proposition that a garnishment proceeding constitutes a "legal action" under the FDCPA, the court nonetheless reasoned that the Ninth Circuit did not address whether such actions were "against the consumer." 165 F. Supp. 2d at 1381. Instead, the Ninth Circuit only addressed whether an enforcement action on a previous judgment constituted a "legal action on a debt" for purposes of the venue provision. Id.

In response, Schuback cites Adkins v. Weltman, Weinberg & Reis Co., L.P.A., No. 2:11–cv–00619, 2012 WL 604249 (S.D. Ohio Feb. 24, 2012), to support his view that a writ of execution *is* against the consumer even when the "garnishee is named

---

[2] Under Georgia state law, a garnishment proceeding is explicitly defined by statute as an action between the judgment-creditor and the employer-garnishee, although a judgment debtor may file a traverse in order to become a party to the proceedings. Pickens, 165 F. Supp. 2d at 1381 (citing GA. CODE ANN. § 18–4–93).

[3] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a.

as a defendant in an enforcement action." (Doc. 21, at 8). The <u>Adkins</u> court held that a garnishment proceeding is necessarily against the employee-judgment debtor, not the employer-garnishee:

> Only the judgment creditor and the judgment debtor have any beneficial interest at stake in a garnishment action. The nominal 'defendant' in a wage garnishment, the employer-debtor of the employee-judgment debtor, has no claim to the money garnisheed [*sic*]. The employer's only interest is in not becoming liable to pay the wages to both the employee and the employee's judgment creditor. That danger is avoided by paying the wages into the court, which then determines who is entitled to those funds.

2012 WL 604249 at *6. The <u>Adkins</u> court further reasoned that the debtor must be afforded notice and the right to contest the garnishment under the Due Process Clause of the Constitution. <u>Id.</u> (citing <u>Sniadach v. Family Fin. Corp. of Bay View</u>, 395 U.S. 337 (1969)). Thus, "[i]t would put form over substance to find that a garnishment action is solely 'against' the third party debtor and not the judgment debtor." <u>Id.</u> at *1.

Although not relied upon by either party, <u>Smith v. Solomon & Solomon, P.C.</u>, CIV.A. 12-10274-RBC, 2012 WL 3636861 (D. Mass. Aug. 23, 2012) is also instructive. The <u>Smith</u> court determined that a post-judgment enforcement action under the Massachusetts trustee process is not "against the consumer," and, hence, is not subject to the FDCPA's venue provision. Rather, the court held that the trustee process is solely against the third-party trustee:

> It is clear that the remedy sought by a plaintiff in a Massachusetts' trustee process action is to compel the employer-trustee to act. That is, the plaintiff in such proceedings is seeking to have the court order the trustee to redirect the monies it owes to the employee-judgment debtor to the judgment creditor in order to satisfy the underlying judgment

7

> debt. It is the employer-trustee who is served with the summons, who is subject to the court's jurisdiction, who must answer the summons, and against/for whom judgment will be rendered. Mass. R. Civ. P. 4.2(b). Thus, the Court finds that it is clear that Massachusetts' trustee process is a legal action directed against the third-party trustee, not the consumer.

Smith, 2012 WL 3636861 at *3. In so holding, the court distinguished Adkins, stating as follows:

> Applying the Adkins court's analysis to Massachusetts' trustee process proceedings would be improper, primarily because the statutory framework supporting the Adkins decision is vastly different. Garnishment proceedings in Ohio are defined by statute as against the employee-judgment debtor, not the employer-garnishee. Ohio Rev. Code Ann. § 2716.03. In these proceedings, service and jurisdiction are directed at the employee, not the employer.

Id. at *4. The Smith court acknowledged that the judgment-debtor must be served with a copy of the complaint, a notice of hearing, and the motion for trustee process. Id. (citing MASS. R. CIV. P. 4.2(c)). Nevertheless, according to Smith, it would be a "judicial stretch" to find that this procedural step constituted an action against the consumer. Id. at *5. "While the judgment debtor certainly has an interest in the hearing . . . . [t]he judgment debtor has already had her day in court." Id.

In the matter *sub judice*, Van Embden claims that the relationship between a creditor and a bank upon which a levy is served is one of creditor and garnishee. (Doc. 23, at 8). Such a relationship, according to Van Embden, is similar to the relationship between judgment-creditor and garnishee in Pickens, thereby lending support to the view that a writ of execution in New Jersey is not an action "against

any consumer" under the FDCPA's venue provision.  After reviewing New Jersey substantive law regarding writ of execution procedure, the court agrees.

It is the court's threshold duty to apply the FDCPA's venue provision as written.  See, e.g., Dodd v. United States, 545 U.S. 353, 359 (2005) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000) (internal quotation marks omitted).  The FDCPA statutory text is clear in that it applies only to actions "against any consumer." 15 U.S.C. § 1692i.  However, the FDCPA's statutory text provides no further guidance as to whether, in an enforcement action, a writ of execution is against the consumer.  Thus, the issue devolves to a matter of state law and, in the case *sub judice*, the court must look to New Jersey substantive law.

In New Jersey, a plaintiff who obtains a judgment against a defendant may cause the personal property of the judgment debtor to be seized and sold and the proceeds applied to the judgment and costs by way of execution.  See N.J. STAT. ANN. §§ 2A:17-1 et seq.  New Jersey law also provides for levying upon money held in a judgment-debtor's bank account.  Id. § 2A:17-15.  Furthermore, once the court enters a judgment, a writ of execution may issue at the same time to any county. Id. § 2A:17-4.  And finally, when a judgment-creditor levies against the judgment-debtor's bank account, the bank is considered the "garnishee" for purposes of § 2A:17-63 (order to garnishee to pay debt).  See, e.g., PRA III, LLC v. Capital One,

9

N.A., No. A-0453-08T3, 2009 WL 2176656 at *9 (N.J. Super. Ct. App. Div. July 23, 2009) ("[W]e note that a bank account is a 'debt due' to an account holder from the bank. Therefore, in reading the statute [§ 2A:17-63], the bank is the garnishee."); Wilton Enter., Inc. v. Cook's Pantry, Inc., 552 A.2d 1031, 1033 (N.J. Super. Ct. Ch. Div. 1988).

The relevant statute under New Jersey writ of execution procedure is § 2A:17-63, which provides in pertinent part:

> After a levy upon a debt *due or accruing to the judgment debtor from a third person*, herein called the *garnishee*, the court may upon notice to the garnishee and the judgment debtor, *and if the garnishee admits the debt*, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just.

N.J. STAT. ANN. § 2A:17-63 (emphasis added). Although New Jersey's writ of execution procedure differs from the wage garnishments at issue in Pickens and Adkins, and from the trustee process in Smith, the court finds the Smith court's analysis persuasive. Van Embden, as debt collector for judgment-creditor, sought an enforcement action to require the *bank*, as garnishee, to redirect monies owed to Schuback, the judgment-debtor. Nowhere in the statutory code does New Jersey characterize an execution as "against the judgment debtor," as does Ohio law in a garnishment proceeding. See OHIO REV. CODE ANN. § 2716.03. To the contrary, the action was singularly directed by judgment-creditor to the garnishee bank. Moreover, it was the garnishee bank's sole responsibility to respond, either by admitting or denying the debt. See Lesal Interiors, Inc. v. Echotree Assocs., L.P., 47

10

F.3d 607, 615 (3d Cir. 1995) ("If the garnishee disputes the debt, a motion under this provision [2A:17-63] must be denied. . .").

The court is mindful of Schuback's claim that he is affected by the writ of execution and that he has an underlying interest in the proceeding. (Doc. 21, at 8). Nevertheless, there is no dispute that the writ of execution complied with New Jersey substantive law. As in Smith, due process concerns are alleviated because Schuback has already had his day in court.[4] To hold that notice of the writ of execution to Schuback constitutes a legal action against him for purposes of the FDCPA would, indeed, be a "judicial stretch." See Smith, 2012 WL 3636861 at *5.

Under Schuback's interpretation of the FDCPA's venue provision, a writ of execution to enforce a previous judgment could only be served upon a bank where plaintiff resides or the underlying debt accrued. The judgment debtor could easily avoid a bank levy by conducting his banking in a county other than where he resides or where the underlying debt accrued. The FDCPA should be construed broadly to effectuate its purposes of not only eliminating abusive debt collection practices but also "insur[ing] that those debt collectors who refrain from using

---

[4] Along these lines, the court agrees with the Federal Trade Commission's view on enforcement actions under the FDCPA: "If a judgment is obtained in a forum that satisfies the requirements of this section, it may be enforced in another jurisdiction, because the consumer previously has had the opportunity to defend the original action in a convenient forum." Statements of General Policy or Interpretation: Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50109 (Dec. 13, 1988). The court recognizes that the FTC commentary "does not have the force of law" and is "not entitled to deference in FDCPA cases except perhaps to the extent [its] logic is persuasive." Brown v. Card Serv. Ctr., 464 F.3d 450, 455-56 (3d Cir. 2006) (citing Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d Cir. 1993)). The Third Circuit has found the FTC commentary persuasive in interpreting FDCPA provisions, see id., and the court likewise finds it cogent here.

11

abusive debt collection practices are not competitively disadvantaged." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(e)). Under the present circumstances, Schuback's interpretation would advance neither of these purposes.

### B. Threats to Garnish Wages and Domesticate the Judgment

Schuback also claims that Van Embden violated the FDCPA by stating that his wages "could be garnished" and that the judgment could be domesticated in Pennsylvania in order to seize Schuback's home. (Doc. 1 ¶¶ 21, 23). Schuback claims that such threats violated 15 U.S.C. §§ 1692e(4)-(5). The FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (4) The representation or implication that nonpayment of any debt will result in . . . sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. §§ 1692e(4)-(5). Schuback avers in his complaint that Van Embden could not legally act upon these threats and, further, that Van Embden never intended to act upon them. (See Doc. 21, at 20 ("As pled in the Complaint, Defendants' lack of *intent* to act on the threats is a violation of the FDCPA.")). Van Embden responds that any attempt to satisfy the judgment through a wage garnishment or a property

lien would be consistent with both New Jersey and Pennsylvania law. (Doc. 14, at 9-10).

With respect to wage garnishments, New Jersey permits an execution against "wages, debts, earnings, salary, income from trust funds, or profits of the judgment debtor" to recover on a judgment entered by the Superior Court. N.J. STAT. ANN. § 2A:17-50. While Pennsylvania law does not expressly permit wage garnishments to satisfy a judgment, Pennsylvania courts have recognized attachment procedures in foreign jurisdictions where the execution has been lawfully effected in that state.[5] See, e.g., Caddie Homes Inc. v. Falic, 235 A.2d 437, 439 (Pa. Super. Ct. 1967); Jones v. United States Steel Corp., 4 Pa. D. & C.3d 552, 555 (Pa. Com. Pl. 1977) (citing Bolton v. Pennsylvania Co., 88 Pa. 261 (1878)).

With respect to levying upon a personal residence, Pennsylvania law allows for domestication of a foreign judgment. The relevant statute provides:

> A copy of any foreign judgment . . . may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

---

[5] The wage garnishment's validity depends on whether the garnishee has connections to New Jersey. See, e.g., Mechanics Fin. Co. v. Austin, 86 A.2d 417, 419 (N.J. 1952) ("A foreign corporation is amenable to the jurisdiction of the New Jersey courts in garnishment if it could itself be sued by its creditor in this State.").

13

42 PA. CONS. STAT. ANN. § 4306. Once the foreign judgment is domesticated, the judgment creditor may levy upon judgment debtor's property in Pennsylvania. See PA. R. CIV. P. 3107 ("Real or personal property of the defendant may be levied upon or attached in any order or simultaneously, as the plaintiff may direct.").

To prevail on a claim under the FDCPA, a plaintiff must prove that a "debt collector's" effort to collect a "debt" from a "consumer" violated *some* provision of the FDCPA. See Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005). After carefully reviewing the pleadings, the court finds that Schuback fails to assert any factual allegations to support a cause of action under the FDCPA. The claims are simply conclusions of law devoid of any factual support.

First, Schuback has not averred any facts to support that Van Embden could not take legal action on his alleged threats. In Schuback's brief, he simply states, "It is questionable as to whether Defendants had any legal authority to make such threats." (Doc. 21, at 15). Rather than supporting his claim with factual statements to suggest that the alleged threats could not be legally acted upon, Schuback claims, "Defendants [sic] entire argument is premised upon plaintiff being authorized to do business in New Jersey and/or that he is associated with an entity who is authorized to do business." (Id. at 18). However, it is plaintiff's burden—not defendant's—to aver facts that suggest the proposed course of action is unlawful.

Second, Schuback has failed to put forth any factual allegations to support his bare legal conclusion that Van Embden did not intend to follow through on his statements. Schuback's complaint only states, "Upon information and belief,

14

Defendants did not intend, or could not legally take such action at the time that they made [those] threat[s]." (Doc. 1 ¶ 24). Schuback further states—again without any factual support—that "Defendants violated §1692e of the FDCPA by using false, misleading, and/or deceptive means in their attempts to collect a debt." (Id. ¶ 28(b)).

In further support of his contention that judgment on the pleadings is not warranted, Schuback states:

> [T]he legality of the actions that Defendants threatened is largely irrelevant [at this stage in the litigation]. Regardless of whether the actions Defendants threatened were legal, their intent to follow through on such actions is entirely an issue of fact . . . Defendants still violated the FDCPA because they lacked any intent to follow through with these threats.

Schuback also cites Brown v. Card Serv. Ctr., 464 F.3d 450 (3d Cir. 2006). In Brown, the Third Circuit reversed the lower court, holding as follows:

> We disagree with the District Court because we conclude that it would be deceptive under the FDCPA for CSC to assert that it could take an action that it had no intention of taking and has never or very rarely taken before. . . . In her complaint, Brown alleges that CSC never intended to file a suit against her for collection, never had any intention of referring her case to its attorney, and that as a matter of course, CSC does not "refer class member's [sic] alleged debts to their attorney for prosecution, but only refer[s] the alleged debt(s) to another collection agency."

Id. at 455. The Third Circuit further stated, "If Brown can prove, after discovery that CSC seldom litigated or referred debts such as Brown's and those of the putative class members to an attorney, a jury could conclude that the CSC Letter was deceptive or misleading." Id.

15

The court disagrees with Schuback that the issue of intent is a jury matter when plaintiff fails to put forth factual allegations to suggest that defendant did not intend to pursue legal action. The complaint at issue in Brown contained more than the bare legal conclusions asserted here, and the Third Circuit largely focused on the complaint's averment that the defendant debt collector engaged in a systematic practice of threatening action that it had "never or very rarely taken before." See Brown, 464 F.3d at 455. Moreover, the Third Circuit decided Brown before the Supreme Court's elaboration that a complaint must contain "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). No longer is the standard whether there is "any set of facts that could be proved consistent with the allegations," Brown, 464 F.3d at 456, to support a cause of action. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal additionally provides the final nail-in-the-coffin for the 'no set of facts' standard."). Rather, the court must determine whether plaintiff has put forth "allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. at 213 (citations omitted). Schuback has not met this standard, and judgment on the pleadings is therefore warranted.

**III.** **<u>Conclusion</u>**

For the foregoing reasons, Van Embden's motion (Doc. 13) to enter judgment on the pleadings will be granted. An appropriate order follows.

                                          <u>S/ Christopher C. Conner</u>
                                          CHRISTOPHER C. CONNER
                                          United States District Judge

Dated:        February 1, 2013

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD SCHUBACK,** | : | CIVIL ACTION NO. 1:12-CV-320 |
| **Plaintiff** | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **THE LAW OFFICES OF PHILLIP S.** | : | |
| **VAN EMBDEN, P.C., and PHILLIP S.** | : | |
| **VAN EMBDEN,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 1st day of February, 2013, upon consideration of the motion (Doc. 13) to enter judgment on the pleadings filed by defendants The Law Offices of Phillip S. Van Embden, P.C and Phillip S. Van Embden, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 13) is GRANTED.
2. The complaint (Doc. 1) is DISMISSED.
3. The Clerk of Court is directed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge